# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 5298 | DATE | 9/16/2004 |
| CASE TITLE | Christina Lusher vs. Jo Anne Barnhart | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Amended Memorandum Opinion and Order granting plaintiff's motion for summary judgment [12-1] and/or remand [12-2] to the extent plaintiff seeks a new administrative hearing, and denying the motion to the extent plaintiff asked the court to award her disability insurance benefits. This amended opinion is issued to clarify and supercede the Memorandum Opinion and Order issued on May 12, 2004 [17-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 3 number of notices | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | SEP 17 2004 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | rbf docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 9/16/2004 date mailed notice | |
| hmb courtroom deputy's initials | | hmb mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 17 2004

| | |
|---|---|
| CHRISTIANA M. LUSHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 02 C 5298 |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## AMENDED MEMORANDUM OPINION AND ORDER[1]

NAN R. NOLAN, Magistrate Judge:

Plaintiff Christiana Lusher seeks review of the final decision of defendant Jo Anne Barnhart, Commissioner of the Social Security Administration ("Commissioner"), denying Lusher's application for disability insurance benefits under Title II of the Social Security Act. 42 U.S.C. §§ 416, 423. This matter is before the court on the parties' cross-motions for summary judgment. Lusher asks the court to either reverse the decision denying her application and grant her disability insurance benefits, or alternatively, to remand her case to the Commissioner for another hearing. The Commissioner, on the other hand, seeks an order affirming the decision to deny Lusher's application. For the reasons explained below, Lusher's motion for summary judgment is granted to the extent she seeks a new administrative hearing regarding her application for disability insurance benefits, but denied to the extent she asks the court to award her disability insurance benefits. The court therefore remands this case to the Commissioner for

---

[1] This amended opinion is issued to clarify and supercede the Memorandum Opinion and Order issued on May 12, 2004.



a new hearing consistent with this opinion.

**Procedural History**

Lusher filed an application for Title II disability insurance benefits ("DIB") on August 11, 1999, asserting that since April 8, 1995, she had been disabled due to fibromyalgia and chronic fatigue syndrome. The Social Security Administration (the "Agency") denied both her initial application and her request for reconsideration.[2] (R. 22, 31.) Lusher timely requested an administrative hearing, which was held on June 13, 2000 by Administrative Law Judge C. J. Sturek ("ALJ"). (R. 10.) In a decision issued on June 30, 2000, the ALJ concluded that Lusher was not disabled within the meaning of the Social Security Act or its related regulations because she had the ability to perform a limited range of sedentary work, and thus was not entitled to disability insurance benefits. (R. 15, 18.) Lusher then requested a review of the ALJ's decision by the Appeals Council, which was denied in a letter dated May 20, 2002 (R. 3-6), thus making the ALJ's decision the Agency's final decision regarding her August 11, 1999 application. *See* 20 C.F.R. §§ 416.1481. Lusher has appealed the ALJ's decision to the federal district court. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**Background**

    **A.    The Medical Evidence and Testimony at the Administrative Hearing**

---

[2] Social Security's original stated reason for rejecting Lusher's application was that her medical records showed no treatment for either chronic fatigue syndrome or fibromyalgia prior to September 30, 1997, when her insurance eligibility expired. (R. 22.) In denying her request for reconsideration, Social Security explained that although medical evidence indicates Lusher had problems with fibromyalgia and chronic fatigue syndrome, "both these conditions were stable" when her eligibility expired. (R. 31.)

Lusher's insured status expired on September 30, 1997, (R. 16), when she was 49 years old, (R. 17). Accordingly, during the administrative hearing, the ALJ focused on the period between April 1995, the disability onset date alleged by Lusher, and September 30, 1997, the date her insured status expired. (R. 157.) At the administrative hearing, Lusher offered evidence that she had been diagnosed with fibromyalgia[3] and cardiomyopathy.[4,5] (*See, e.g.*, R. 165.) She testified that as a result of her medical problems, she has constant pain in her "upper legs, lower back, upper back from the shoulder blades, neck, and down the trapezes [sic] area." (R. 165.) She explained that her muscles cramp up, then the pain becomes sharp. (R. 166.) She followed doctor-prescribed exercises and stretching in an effort to keep the muscle cramping from worsening. (R. 167.) Lusher stated that she began doctor-prescribed exercises "toward the end" of the 1995-1997 time period. (R. 173.)

---

[3]Fibromyalgia is "a painful rheumatic condition of uncertain cause that is characterized by diffuse or localized pain, tenderness, and stiffness of skeletal muscles and associated connective tissue and that is usually accompanied by fatigue." *Merriam-Webster Online Dictionary*, www.merriam-webster.com.

[4]Cardiomyopathy is "any structural or functional disease of heart muscle that is marked especially by hypertrophy of cardiac muscle, by enlargement of the heart, by rigidity and loss of flexibility of the heart walls, or by narrowing of the ventricles but is not due to a congenital developmental defect, to coronary atherosclerosis, to valve dysfunction, or to hypertension." *Merriam-Webster On-Line Medical Dictionary*, www2.merriam-webster.com.

[5]Lusher also offered evidence that she has chronic fatigue syndrome. Although she had received that diagnosis by the time of the administrative hearing, the court has been unable to find anything in the administrative record indicating that Lusher was diagnosed with chronic fatigue syndrome before her insured status expired. (*See, e.g.*, R. 143) (chronic fatigue syndrome diagnosis dated June 7, 1999). While a retrospective diagnosis may be considered "if it is corroborated by evidence contemporaneous with the eligible period," *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998), Lusher does not suggest that Dr. Schecter's diagnosis in 1999 should be considered retrospective. Indeed, Lusher does not argue that the ALJ should have considered her chronic fatigue syndrome. Accordingly, the court shall not address the issue further.

Lusher further testified that she suffers from constant fatigue. (R. 165.) As a result, she typically would lie down from 10:30 a.m. or 11:00 a.m. until 4:00 p.m. every day. (R. 170.) She reported that during the relevant time period, she did dishes for herself, could pull up the covers on her bed, and occasionally read (but only for very limited periods of time, due to her inability to maintain concentration). (R. 170-71.) She did not do the laundry, take care of paying the bills, or participate in any activities outside the home. (R. 170-71.) She spent most of her time in bed. (R. 171.)

Additionally, Lusher explained that has suffered from depression for most of her life, since before she was ever diagnosed with fibromyalgia. (R. 169.) Lusher was seen by a psychiatrist in or around 1995, who diagnosed her with and treated her for depression. (R. 121.) At the time of the hearing, she was taking an anti-depressant prescribed by Dr. Schecter. (R. 168.)

Lusher has a college education, but no history of past relevant work. (R. 11.) Indeed, Lusher testified that she had never been able to work a 20-hour/week part-time job, let alone a full-time job. (R. 160.) According to her testimony, the most she had ever worked during the relevant time period (or ever) was seven hours a week, for one hour a day, as a spiritual counselor doing psychic readings over the telephone from her home. (R. 160-61.)

With respect to the fibromyalgia diagnosis, Lusher's medical records include a letter from Dr. Stephen Schecter dated June 21, 1996, stating that when Lusher saw him approximately fifteen years earlier, "she was felt to have fibromyalgia."[6] (R. 95.) In another letter dated

---

[6]Dr. Schecter treated Lusher again in 1999. His records from June 7, 1999 indicate that his original chart regarding Lusher (from twenty years earlier) had been discarded. (R. 143.)

4

October 23, 1997, Dr. Paul Epstein noted that Lusher "has a long history of fatigue" and had been previously diagnosed with fibromyalgia. (R. 120.) Dr. Epstein opined that Lusher suffered from depression, and that, at a minimum, he thought her fatigue was associated with poor sleep. (R. 120.)

### B. The ALJ's Ruling

In determining whether Lusher is disabled within the meaning of the Social Security Act, the ALJ had to evaluate: (1) whether Lusher was currently unemployed; (2) whether she has a severe impairment;[7] (3) whether her impairment satisfies the criteria for any of the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1 ("Listing"); (4) whether Lusher is able to perform her past work; and (5) whether she has the ability to perform work available in the national economy. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). A conclusion that a claimant's impairment qualifies as one of the Listing impairments results in a finding that a claimant is disabled. *Id.* Likewise, even if the impairment does not qualify as a Listing impairment, if the ALJ concludes that the claimant lacks the ability to perform work available in the national economy after assessing the claimant's residual functional capacity, the claimant is deemed disabled within the meaning of the Social Security Act.

Here, after conducting this five-step inquiry, the ALJ issued a written decision dated June 30, 2000, denying Lusher's application for disability insurance benefits. Specifically, he found that Lusher had not been engaged in substantial gainful activity since April 8, 1995 (the first step). (R. 16.) He also found that at the time her disability insurance expired, she suffered from

---

[7] A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c).

cardiomyopathy, a severe impairment, but not one that satisfied the Listing criteria (steps 2 and 3). (R. 16.) The ALJ did not address the severity of either Lusher's fibromyalgia or depression. The ALJ further concluded that as of September 30, 1997, Lusher had no history of past relevant work (step 4).

At the fifth step of the evaluation process, the burden of proof shifted to the ALJ, as designate of the Commissioner, to show that Lusher was capable of performing work in the national economy when her insured status expired. *Clifford*, 227 F.3d at 868. In assessing Lusher's residual functional capacity ("RFC"), the ALJ concluded that when Lusher's insured status expired, she had the ability to: (1) "sit for up to 6 hours in an 8 hour workday," (2) "to stand and/or walk for up to 6 hours in an 8 hour workday," (3) "lift no more than 10 pounds at a time," and (4) "occasionally lift or carry small articles[.]" (R. 17.) According to the ALJ, Lusher also had unlimited ability to push and pull. (R. 17.) The ALJ further concluded that Lusher's "capacity for the full range of sedentary work was diminished by significant non-exertional limitations which made it impossible for her to more than occasionally climb, balance, bend, stoop, kneel, crouch, squat and crawl, work while exposed to concentrated hazards, and perform work precluded by a slight inability to concentrate, maintain attention for extended periods, and keep up a pace as a function of pain." (R. 17.) Although the ALJ found that Lusher was unable to perform the full range of sedentary work, he ultimately concluded that "she was able to make an adjustment to work which exists in significant numbers in the national economy" (step 5). (R. 11, 16-18.) Examples of work he concluded that Lusher had the ability to perform were sales order taker and clerical worker. (R. 18.) The ALJ thus found that Lusher was not disabled within the meaning of the Social Security Act when her insured status expired, and was not

6

entitled to receive disability insurance benefits. (R. 11, 17-18.)

**<u>Discussion</u>**

Under the Social Security Act, 42 U.S.C. § 405(g), the ALJ's decision must be upheld as long as it is supported by substantial evidence. *Clifford*, 227 F.3d at 869. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). Although the reviewing court considers the entire record, the court "may not decide the facts anew, re-weigh the evidence or substitute its own judgment for that of the [ALJ] to decide whether a claimant is or is not disabled." *Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on [the ALJ, as designate of the Commissioner]." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

The standard of review is deferential—but only to a point. Failure to "build an accurate and logical bridge from the evidence to his conclusion" warrants reversal. *Clifford*, 227 F.3d at 872. The ALJ must provide more than conclusory statements for his decision to be upheld. In order for appellate review to be meaningful, the ALJ must "articulate reasons for accepting or rejecting entire lines of evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). While the ALJ need not provide "a written evaluation of every piece of evidence or testimony[,]" the ALJ cannot limit his discussion to the evidence that supports his ultimate conclusion. *Id.*

Here, the court remands Lusher's case for a new hearing because the ALJ's written opinion issued on June 30, 2000 fails "to build a rational bridge from the evidence to the finding that [Lusher] was not totally disabled." *Barrett v. Barnhart*, 355 F.3d 1065, 1069 (7th Cir.

7

2004). The most evident omission is the ALJ's failure to address Lusher's fibromyalgia. The opinion does not assess whether her fibromyalgia constitutes a severe impairment, let alone whether that condition is disabling. Indeed, the written evaluation is void of any substantive discussion of fibromyalgia whatsoever.

In opposing summary judgment, the Commissioner contends that there is no evidence in the record that Lusher received any treatment for fibromyalgia between her alleged onset date and her date last insured. (Resp. at 9.) That is true, but fibromyalgia is a chronic condition without a known cure. *Estok v. Apfel*, 152 F.3d 636, 637 n. 1 and 642 (7th Cir. 1998). The record shows that Lusher has suffered from fibromyalgia since 1981, (R. 95), and continued to suffer from it at the time of the administrative hearing, (R. 143). Of course, the fact that Lusher had fibromyalgia during the relevant time period does not mean she was disabled. Fibromyalgia often is not disabling. *Estok*, 152 F.3d at 640 (7th Cir. 1998). Nevertheless, the ALJ had an obligation to assess whether Lusher's symptoms of fibromyalgia—namely, pain and fatigue—were severe enough during the relevant period to prevent her from engaging in substantial gainful activity, thus rendering her disabled. *See* 20 C.F.R. § 416.905(a) (defining disability under Social Security Act). In failing to make that assessment, the ALJ implicitly rejected an entire line of evidence without explanation. That failure warrants reversal and remand. *Herron*, 19 F.3d at 333. On remand, the ALJ must properly assess Lusher's fibromyalgia.

The court also finds it necessary to provide additional instruction on remand, in light of certain other omissions from the ALJ's written decision.[8] When the ALJ assesses Lusher's

---

[8]The following discussion is based on other arguments raised by the parties in the briefing. The court addresses those arguments to the extent the arguments were comprehensible, and only to the extent necessary to clarify what must be done on remand.

8

fibromyalgia, he must properly conduct and explain the RFC assessment. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.* laboratory findings) and nonmedical evidence (*e.g.* daily activities, observations)." SSR 96-8p, 61 FR 34474, 34477. In other words, in determining Lusher's RFC, the ALJ has an "affirmative obligation to consider plaintiff's pain and fatigue complaints when determining whether plaintiff could perform a certain category of work. When a factor is basic to a plaintiff's claim of disability, it is not enough for the ALJ to state that he examined the entire record. He should also explain whether the evidence of a critical factor, although considered, was insufficient for a finding of disability."[9] *Knapp v. Apfel*, 11 F. Supp. 2d 235, 238 (N.D.N.Y. 1998). Further, the ALJ cannot rely only on evidence that supports his conclusion (whatever that may be).[10] *Herron*, 19 F.3d at 333; *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1101 (E.D.

---

[9] In the ALJ's original RFC assessment focusing on the disabling effects of Lusher's cardiomyopathy, the written analysis was conclusory. For example, the ALJ concluded that Lusher could sit for up to 6 hours in an 8 hour workday, and stand or walk for up to 6 hours in an 8 hour workday, without ever mentioning Lusher's testimony that, during the relevant time period, she had to spend most of the time in bed.

[10] In the original assessment, for example, the ALJ's credibility findings were based on selective evidence. The ALJ noted Lusher's complaints about exhaustion, but rejected them because, despite those complaints, the record showed that Lusher "lifted weights almost daily." (R. 14.) The ALJ did not, however, address the amount of weight Lusher lifted (was she lifting 2 pounds, or 25 pounds?). Nor did he consider that exercise is part of a comprehensive treatment course for fibromyalgia. *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1096 (E.D. Wis. 2001) (citing *The Merck Manual of Diagnosis and Therapy* (17th ed. 1999)); *see also Liscano v. Barnhart*, 230 F. Supp. 2d 871, 877 (N.D. Ind. 2002) (physician prescribed 5-days/week exercise routine for fibromyalgia patient he considered unable to work).

Similarly, the ALJ noted that Lusher "reported that she was able to take care of her mother, move from Illinois to Maryland, and work part-time." (R. 14.) The context, which is significant, is lacking. For example, Lusher's "part-time" work was for one hour/day for a total of 7 hours/week from her home. (R. 160-61.) Regarding the cross-country move, Lusher testified that she moved to Illinois to live with her mother out of necessity after her husband forced her out of their house in Maryland. (R. 164.) Even more significantly, that move took

Wisc. 2001) (ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.") (citing SSR 96-8p).

Additionally, the ALJ failed to assess Lusher's depression. Again, the Commissioner argues that there is no evidence that Lusher was treated for depression during the relevant time frame. The record, however, contradicts the Commissioner's argument. (R. 121) (record dated 10.23.97 stating that Lusher was seen by a psychiatrist 2 years earlier, who diagnosed and treated her for depression). Moreover, even if Lusher had not sought treatment, that is a factor to consider in assessing the severity of her depression—it does not excuse the ALJ from making an assessment. In fact, the regulations in place at the time the ALJ issued his written opinion on June 30, 2000, required an ALJ to complete a Psychiatric Review Technique Form ("PRTF") whenever a claimant alleges a mental health impairment. *See Cook v. Apfel*, No. C 98-2204SI, 1999 WL 342038, at *7-8 (N.D. Cal. May 18, 1999); 20 C.F.R. § 404.1520a (before August 21, 2000 amendment). The ALJ neither filled out the requisite PRTF for Lusher nor made any other assessment regarding Lusher's depression. Again, an entire line of evidence was implicitly rejected without explanation.

The court recognizes that effective September 20, 2000, the regulations no longer require the ALJ to complete a PRTF. *See* 20 C.F.R. § 404.1520a(e)(2); Social Security Rules & Regulations, *20 C.F.R. Parts 404 and 416 Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 FR 50746, 2000 WL 1173632 (Aug. 21, 2000). Accordingly, on remand the ALJ should evaluate Lusher's depression using the current

---

place in March 1999, 1 ½ years *after* Lusher's insured status expired. (R. 164.) Further, the court's review of the record revealed no evidence that Lusher took care of her mother. (If such evidence is in the record, the ALJ did not properly cite to it.)

procedures set forth in 20 C.F.R. § 404.1520a. *Kenoyer v. Barnhart*, No. 01-35469, 2002 WL 31396379, at *1 (9th Cir. Oct. 23, 2002) (unpublished opinion).

Additionally, at the new hearing, the hypotheticals posed to the vocational expert should include whatever limitations the ALJ finds credible. *Koenig v. Chater*, 936 F. Supp. 776, 785 (D. Kans. 1996). If the ALJ does not accept certain alleged limitations (and thus does not include them in the hypothetical), the ALJ should make an express finding that he rejected those limitations. *Id.*

## Conclusion

For the reasons explained above, Christiana Lusher's motion for summary judgment is granted to the extent she seeks a new administrative hearing, but denied to the extent she asks the court to award her disability insurance benefits. This case is remanded for a new hearing for proper consideration of Lusher's allegations that she was disabled by fibromyalgia and depression prior to the expiration of her insured status on September 30, 1997.

ENTERED:

NAN R. NOLAN

United States Magistrate Judge

Dated: September 16, 2004

11